IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**BRENDA GOODWIN JUNIEL**                                      **PLAINTIFF**

VS.                         CASE NO. 4:08CV004221 JMM

**ARKANSAS VETERAN'S HOME, ET AL.**                            **DEFENDANTS**

**ORDER**

Pending before the Court are defendants' Motion for Summary Judgment and plaintiff's response. For the reasons stated below, the Motion for Summary Judgment is granted (#13).

Plaintiff claims that defendants discriminated against her by creating a hostile work environment based upon racial harassment and constructive discharge based upon her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; 42 U.S.C. § 1983 and the Arkansas Civil Rights Act of 1993 ("ACRA"). Plaintiff brings these claims against defendants David Fletcher and Albert Wilson in their official capacities only, and seeks compensatory and punitive damages.

Defendant contends that (1) the claims made pursuant to Title VII and ACRA against Fletcher and Wilson should be dismissed as they are not employers for purposes of Title VII and ACRA; (2) the claims made pursuant to § 1983 and ACRA against all defendants should be dismissed based upon Sovereign Immunity; (3) defendants Fletcher and Wilson are not proper parties under § 1983; and  (3) plaintiff has failed to present sufficient facts to establish that she was subjected to a racially hostile environment or to establish a constructive discharge based upon race.

1

I. *Facts*

Plaintiff, an African-American, began her employment with the Arkansas Veteran's Home ("the AVH") in April of 2006 as an Activities Director and in June of 2006 was promoted to Social Worker I. Plaintiff received orientation regarding the AVH's policy and procedures, including the discipline and grievances procedures.

As a minimum qualification for a Social Worker I position, a social worker must be licensed by the Arkansas Social Work Licensing Board ("the Board"). Because plaintiff was not licensed, the Board issued plaintiff a one year provisional license on October 9, 2006.

Both licensed and unlicensed individuals can work as social workers at the AVH if they have a degree in social work. However, unlicensed social workers' case notes, clinical notations, and other documentation cannot be certified unless a licensed social worker reviews and approves the documentation. This requirement is established and enforced by the Office of Long-Term Care and the Federal Veterans Administration.

The AVH is required to have at least one licensed social worker. Plaintiff told Jones at the time of her promotion that she would take the licensing exam within the year and that she expected to be licensed by October of 2007. During the one year provisional license period, plaintiff had three opportunities to take the social worker exam. Plaintiff took the test on two occasions and failed both times. To date, plaintiff has not passed the social worker exam.

At the time plaintiff was hired, Kathy Jones was the AVH's Administrator and Arlene Towne, an African American, who was plaintiff's immediate supervisor was a licensed social worker. Defendant Fletcher is the Director of the Arkansas Department of Veteran Affairs which is the supervising agency of the the AHV. Mike Turner, a non-party, was the Interim

2

Administrator beginning in April or May of 2007, and is no longer employed at the AVH. Defendant Albert Wilson, who was hired in July of 2007, is the current Administrator of the AVH.

Plaintiff testified that Turner harassed her by talking to her about Towne and trying to get plaintiff to make critical remarks about Towne. Towne left employment with the AVH on October 12, 2007, which left plaintiff as the only social worker.

From October 12, 2007 until January of 2008, the AVH did not have a licensed and certified social worker. Plaintiff testified that starting in October or November of 2007, Wilson repeatedly asked plaintiff when she was going to get her license. Plaintiff testified that Wilson told her in December of 2007 that the agency was interest in hiring master level social workers.

After plaintiff's promotion to Social Worker I, Wilson requested plaintiff to assist with Wal-Mart trips for the AVH residents, call Bingo games and participate in other activity related duties that the previous social worker had not been ask to do. Plaintiff complained to Wilson about these requests and after the AVH hired additional workers, plaintiff no longer had to fill in for the activities department. Pamela Anderson, who was white, was hired as the Activities Supervisor.

Plaintiff was asked to assist the residents with forms regarding the "stimulus package." Plaintiff informed defendant Wilson that she did not know how to complete the forms and the forms were completed by someone else. Plaintiff testified that she was not included in some interviews for prospective AVH employees while Anderson was included in these interviews, and that she was not given the same interview materials as Anderson.

Plaintiff did not report Wilson's alleged harassment related to her not having a social workers' license.  Plaintiff testified that she did report to Wilson that different employees and residents had commented to her that she was not a real social worker.  Plaintiff never complained to Wilson about racial discrimination or harassment during her employment at the AVH with the exception that plaintiff told Wilson that Fred Rowe, who was white and an AVH employee, was constantly walking by her office with a frown on his face.

In 2006, while plaintiff served as Activities Director,  Towne told plaintiff that "CA" stood for "coon ass."  The next day, Rowe, called a resident a "CA."   Plaintiff considered this to be a racial slur against African-Americans.

In September or October of 2007, Towne told plaintiff that Rowe had previously made the statement "heil Hitler" to another resident.  Plaintiff was not present when the statement was made and did not complain, or file a grievance.

Plaintiff  testified that Rowe and Glenn, a fellow employee who worker in maintenance, would walk by her office in an intimidating way with a frown.  Sometime in 2007, Rowe stated to plaintiff, "Girl, how are you doing?" which plaintiff found to be offensive.  In 2008, Rowe called one of the residents "bubba" which plaintiff also found offensive.

Rowe was counseled about the "CA" and Hitler statements.  Rowe had no official supervisory authority over plaintiff and no longer works for the AVH.

Plaintiff testified that Glen called a dog a "redneck dog" at a picnic and asked Christy, a fellow employee, whether Christy's  husband, who plaintiff believes is Hispanic, had "come over on a boat or over a wall?"  Plaintiff reported this statement to Towne.  Glenn also told plaintiff that he thought Christy should have been given the Activities Director job instead of plaintiff,

4

and that Glen looked at her in a hostile manner.

Plaintiff testified that Anderson and Christy had an easier time obtaining supplies from Rowe and that Rowe made Christy a master key.  Plaintiff testified that she asked Rowe for a master key and he did not provide her with one or with a key to the kitchen, but that Jones let plaintiff share Jones's set of keys.

Rowe and Wilson came into plaintiff's office looking through her papers for some coupons for the residents which plaintiff found offensive.  Plaintiff believes that white people were given an easier time than plaintiff.

In January of 2008, the AVH contracted with Richard Miller, a licensed certified social worker to review plaintiff's documentation.  Following Towne's separation but prior to Miller's contract, the AVH was issued a disciplinary action by its federal counterpart for failing to have at least one licensed social worker on staff

In April of 2008, plaintiff went on Family Medical Leave Act ("FMLA") because she was diabetic, suffering from high blood pressure and stressed.  Plaintiff testified that the stress was work related based upon her work load of caring for seventy-five residents who had mental illnesses.

While plaintiff was on FMLA leave the AVH  hired Shantel Moore, an African-American, as a social worker.  Moore is a licensed, certified social worker.

Plaintiff returned to work on May 2, 2008.  Plaintiff testified that after her return to work, she and Wilson had a discussion in which Wilson stated that plaintiff bitched, complained, and whined all the time.  Plaintiff eventually resigned on May 13, 2008, based upon her health and because of the alleged racial tension at the AVH.  Plaintiff did not file any grievances regarding

any of the remarks or actions she considered offensive.

The AVH hired Nikki Thornton, an African American, to replace plaintiff. Thornton while not a licensed social worker is still employed with the AVH as a social worker.

Plaintiff testified that she would return to work at the AVH and could work with defendant Wilson if he treated her as a professional. In addition, plaintiff testified that while she would return as a social worker if she was treated respectfully, she would like to return to work at the AVH doing medicals or as an Activities Director.

Plaintiff believes she was subjected to racially hostile harassment because (1) defendant Wilson repeatedly questioned her about her social worker's license; (2) Wilson reminded her that she was not licensed; (3) Rowe made several racial comments and treated plaintiff with disdain; and (4) Glen described a dog as a redneck and made racial comments about a fellow employee's husband. Plaintiff also testified that not everything that she complained of was based upon race and that her treatment could have been based upon age or gender.

During plaintiff's employment 76% of the AVH employees were African American and currently 79% of their employees are African American.

II. *Analysis*

Summary judgment is appropriate when there is no genuine issue of material fact and the dispute may be decided solely on legal grounds. *Seymour v. City of Des Moines*, 519 F.3d 790, 796 (8th Cir. 2008); Fed. R. Civ. P. 56. The initial inquiry is whether there are genuine factual issues that can be properly resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Where a motion for summary judgment is properly made and supported an opposing party must set forth specific facts showing a genuine issue for trial. *See* Fed.R.Civ.P. 56(e)(2).

    A. *Title VII Claims*

Absent direct evidence of discrimination, as is the case here, the Court employs the familiar *McDonnell Douglas* burden-shifting framework to conduct an analysis under Title VII employment discrimination cases. *See Turner v. Honeywell Fed. Mfg. & Techs.*, *LLC*, 336 F.3d 716, 720 (8th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). "Under the McDonnell Douglas framework, a presumption of discrimination is created when the plaintiff meets his burden of establishing a *prima facie* case of employment discrimination. A minimal evidentiary showing will satisfy this burden of production." *Pope v. ESA Services, Inc*., 406 F.3d 1001, 1006-1007 (8th Cir. 2005) (citations omitted). Once a plaintiff successfully establishes a *prima facie* case, the burden shifts to the employer to articulate "a legitimate, non-discriminatory reason for its adverse employment action." *Davis v. KARK-TV, Inc*., 421 F.3d 699, 704 (8th Cir. 2005) ( citing *Williams v. Ford Motor Co.*, 14 F.3d 1305, 1309 (8th Cir.1994)). If the employer meets its burden, "the presumption of discrimination disappears, requiring the plaintiff to prove that the proffered justification is merely a pretext for discrimination." *Pope v. ESA Services, Inc*, 406 F.3d at 1007. The plaintiff has the burden of persuasion at all times. *Id.*

    1. *Racial Harassment*

Plaintiff's hostile work environment based upon racial harassment claim requires a *prima facie* showing that, among other things, the harassment affected a term, condition, or privilege of her employment which requires offering facts that show the harassment to have been

7

sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment as viewed objectively by a reasonable person. *See O'Brien v. Department of Agriculture*, 532 F.3d 805, 809 (8th Cir. 2008).

The comments made by plaintiff's fellow employees and the actions taken by her supervisors or fellow employees were not sufficiently severe or pervasive to alter the conditions of plaintiff's employment so as to create an abusive working environment. With the exception of Rowe asking plaintiff, "Girl, how are you doing?" and his walking by her office while frowning, none of the complained of racial remarks were directed at plaintiff and she was not present when Rowe made the "heil Hilter" remark. "Not all unpleasant and uncivil conduct creates a hostile work environment." *See Bowen v. Missouri Dept. of Soc. Servs.*, 311 F.3d 878, 884 (8th Cir. 2002).

There is no evidence that any of the remarks she considered offensive including Wilson's questions regarding her license or her work schedule which she considered disproportionate to other AVH employees were related to plaintiff's race. Plaintiff has failed to provide any evidence that Wilson or Fletcher knew of her allegations regarding the lack of keys. Moreover, plaintiff's own testimony is that while she did not participate in every interview she did sit in own interviews for the Activities Director position, and several social workers applicants. There is no evidence that every social worker at the AVH except plaintiff participated in every interview for all positions. Plaintiff's own testimony is that her alleged unequal treatment could have been based upon her age or gender as opposed to race.

Plaintiff has failed to establish a hostile work environment based upon racial harassment and these claims are dismissed.

2. *Constructive Discharge*

Plaintiff bases her constructive discharge claim on the same allegations the Court found insufficient to establish a hostile work environment based upon racial harassment. To establish a constructive discharge claim, plaintiff has a substantial burden in that she must first show that "a reasonable person in [her] situation would find the working conditions intolerable...." *O'Brien v. Department of Agriculture*, 532 F.3d at 810 (citing *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 534 (8th Cir. 2008)).

The Court of Appeals for the Eighth Circuit has held that if a plaintiff fails to establish a hostile work environment claim, she has also failed to establish a constructive discharge claim as a plaintiff has a higher evidentiary burden when seeking to establish constructive discharge. *See O'Brien v. Department of Agriculture*, 532 F.3d at 809 (citing *Tran v. Trs. of State Colls. in Colo.,* 355 F.3d 1263, 1270-71 (10th Cir. 2004)).

Because plaintiff has failed to establish a hostile work environment claim, she has also failed in the her constructive discharge claim. These claims are dismissed.

B. *42 U.S.C. § 1983 and Arkansas Civil Right Act Claim*s

The Eleventh Amendment bars § 1983 suits against the State or state agencies, but state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment. *See Monroe v. Arkansas State University*, 495 F.3d 591, 594 (8th Cir. 2007). Plaintiff's ACRA suit against Fletcher and Wilson in their official capacities is barred by Article 5 Section 20 of the Arkansas Constitution. *See Simons v. Marshall*, 369 Ark. 447, 255 S.W.3d 838 (2007). Thus all of plaintiff's claims brought pursuant to § 1983 for monetary relief and all of plaintiff's claims brought pursuant to ACRA are dismissed.

Plaintiff's remaining § 1983 claims of discrimination for which she seeks prospective injunctive relief, *e.g.* reinstatement, are without merit and dismissed for the same reasons her Title VII claims were dismissed. *See Littleton v. Pilot Travel Centers, LLC*, 568 F.3d 641, 642 (8th Cir. 2009) (Title VII and ACRA claim are analyzed in the same manner).

III. *Conclusion*

Defendants' Motion for Summary Judgment is granted and plaintiff's complaint is dismissed. All pending motions are dismissed as moot. Judgment will be entered accordingly.

IT IS SO ORDERED THIS   23   day of   November , 2009.

_____
James M. Moody
United States District Judge